Bradly R.E. COX, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 79A05–0202–CR–67.

Court of Appeals of Indiana.

Oct. 28, 2002.

Publication Ordered Dec. 18, 2002.

1152

Earl McCoy, Law Office of Patrick Harrington, Lafayette, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Jodi Kathryn Stein, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

**OPINION**

SULLIVAN, Judge.

Following a jury trial, Bradly Cox was convicted of Criminal Confinement, a Class

D felony;[1] Battery, a Class B misdemeanor;[2] and Invasion of Privacy, a Class B misdemeanor.[3] He presents two issues for our review, which we restate as:

(1) whether the evidence was sufficient to support the convictions, and

(2) whether the trial court erred in sentencing.

We affirm the convictions and remand for resentencing.

The record reveals that J.H. had received a permanent protective order against Cox, her ex-boyfriend, on December 4, 2000. On December 9, J.H. had gone to the Mirage, an all-ages dance club and pool hall in Lafayette. While there, J.H. saw Cox enter the club. Cox approached J.H. and forcibly tried to remove her from the Mirage. The owner of the Mirage, Roger Herr, would not allow Cox to take J.H. out of the club and ordered him to let her go. Following the exchange with Herr, Cox then left the club. Cox was subsequently arrested and charged with the crimes for which he was convicted.

I

*Sufficiency of the Evidence*

Cox states that the only consistent testimony established that he did not have any contact with J.H. while at the Mirage. He asserts that the State's witnesses' testimony was contradictory and that J.H.'s testimony is replete with incredible dubiousity. In effect, Cox is asking this court to judge the credibility of the witnesses and does not claim that the State failed to prove the elements of the crimes charged if the testimony of the State's witnesses is credible.

Our standard of review for a sufficiency of the evidence claim is well settled. We will not reweigh the evidence or judge the credibility of the witnesses. *VanMatre v. State*, 714 N.E.2d 655, 657–58 (Ind.Ct.App. 1999). We will consider only the evidence which supports the conviction and any reasonable inferences which the trier of fact may have drawn from the evidence. *Id.* at 657. We will affirm the conviction if there is substantial evidence of probative value from which a reasonable trier of fact could have drawn the conclusion that the defendant was guilty of the crime charged beyond a reasonable doubt. *Id.* at 658. Reasonable doubt is a doubt which arises from the evidence, the lack of evidence, or a conflict in the evidence. *Chambers v. State*, 551 N.E.2d 1154, 1156 (Ind.Ct.App. 1990).

We will not impinge upon the jury's resolution with regard to the credibility of witnesses unless confronted with testimony of inherent improbability, or coerced, equivocal, wholly uncorroborated testimony of incredible dubiosity. *Heeter v. State*, 661 N.E.2d 612, 615 (Ind.Ct.App. 1996). A conviction will be overturned only where a victim's testimony is so incredibly dubious or inherently improbable that it runs counter to human experience, and no reasonable person could believe it. *Id.* However, this exception is applied only where a sole witness testifies. *Bowles v. State*, 737 N.E.2d 1150, 1152 (Ind.2000).

In this case, because J.H. was not the only witness to testify to the events, we do not address Cox's claim that her testimony was incredibly dubious. That aside, we do

---

**1.** Ind.Code § 35–42–3–3 (Burns Code Ed. Supp.2002).

**2.** Ind.Code § 35–42–2–1 (Burns Code Ed. Supp.2002).

**3.** Ind.Code § 35–46–1–15.1 (Burns Code Ed. Supp.2002).

note that Cox is correct in asserting that the testimony of the State's witnesses did contain some inconsistencies. However, while there may have been some minor inconsistencies, the testimony of the other witnesses is not wholly unsupportive of J.H.'s testimony as Cox claims. Viewing the testimony of the State's witnesses for what was actually said by each individual, including their statements as to what they did or did not remember seeing, the jury had before it a version of the incident as follows.

J.H. testified that she saw Cox enter the Mirage and that she went to Jeff Michaels, the DJ at the Mirage, to get his help. Michaels testified that J.H. had asked him to call her father and to inform him that Cox was in the Club. J.H. further testified that Cox came to the DJ booth and grabbed her by the arm. Cox then dragged her to the front of the club as she struggled to get away. As Cox dragged J.H., she reached out and grabbed Alex Martinez for help. Martinez, however, because he did not know J.H. well and thought that Cox may have been her brother, boyfriend, or cousin, did not help her but instead told Michaels about what was occurring. After Michaels called J.H.'s father, he went to the front of the club where Cox was holding J.H. by what Michaels believed was her wrist. At this time, Herr, who witnessed Cox dragging J.H. by her arm, told Cox to let go of J.H., an order to which Cox complied after first resisting. Following Cox releasing J.H., Michaels testified that Cox pushed her over a pool table, an act which J.H. characterized as Cox picking her up and throwing her onto the pool table while he yelled at her.

While this version of the incident is completely different than that relayed by Cox and his witnesses,[4] it was for the jury to determine which version of the incident to believe. *See Simpson v. State*, 165 Ind. App. 619, 621, 333 N.E.2d 303, 304 (1975) (stating that it is common for the trial court as the trier of fact to base judgment upon selecting one of two conflicting stories in a criminal case). In such situations the decision to give credence to one story over the other must be a reasoned selection and not an arbitrary decision. *Id.* Here, a review of the transcript leads us to determine that the decision of the jury to convict Cox of the crimes with which he was charged was not arbitrary and that it was within the prerogative of the jury to determine that Cox was guilty of the crimes charged beyond a reasonable doubt.

## II

### *Sentencing*

Cox also claims that the trial court erred in sentencing in that the trial court relied upon improper aggravating circumstances and failed to consider all mitigating factors. Cox also asserts that his sentence is manifestly unreasonable.

 Sentencing lies within the discretion of the trial court. *Powell v. State*, 751 N.E.2d 311, 314 (Ind.Ct.App.2001). Sentencing decisions are reviewed only for an abuse of discretion. *Id.* When a trial court enhances a sentence, the trial court is required to state its specific reasons for doing so. *Id.* The sentencing statement must: (1) identify significant aggravating and mitigating circumstances; (2) state the specific reason why each circumstance is

---

4. Cox asserts that he went to the club but that he had no contact with J.H. He further asserts that he was suddenly approached and punched by an individual whom he did not

know. Cox claims that he and his friends then left the Mirage immediately in order to avoid any further confrontation.

aggravating or mitigating; and (3) demonstrate that the aggravating and mitigating circumstances have been weighed to determine that the aggravators outweigh the mitigators. *Id.* at 315. We examine both the written sentencing order and the trial court's comments at the sentencing hearing to determine whether the trial court adequately explained the reasons for the sentence. *Id.* A sentence enhancement will be affirmed in spite of a trial court's failure to specifically articulate its reasons if the record indicates that the court engaged in the evaluative processes and the sentence imposed was not manifestly unreasonable. *Id.*

 A single aggravating circumstance may be sufficient to enhance a sentence. *Hatchett v. State,* 740 N.E.2d 920, 929 (Ind.Ct.App.2000), *trans. denied.* A sentence enhancement may still be upheld when a trial court improperly applies an aggravator but other valid aggravators exist. *Id.* However, when we cannot say with confidence that the sentencing judge would weigh the valid aggravators against the valid mitigators in the same way that they were weighed when improper aggravators were considered, we must remand for a new sentencing hearing. *Id.* (remanding for a new sentencing hearing when only one valid aggravator and two valid mitigators existed).

At sentencing, the trial court made the following statement:

"The Court's going to find the following aggravating and mitigating circumstances: Mitigating circumstances is his youth and his support of family. Aggravating circumstances he has a poor work history, he has a history of criminal activity, including violent criminal activity, he was convicted as an adult in 1998

of a D Felony, Criminal Recklessness, which was possession of a handgun. You were sentenced to 18 months, it was all suspended." Transcript at 170.

The trial court further stated:

"You had two petitions to revoke in that case; you have several operating while suspended pending and the most recent case. I do see a pattern here of irresponsibility and not taking responsibility for actions. It was somebody else's handgun, I didn't know. Driving While Suspended weren't my fault. There is some problems with accidents and no insurance, although looking at your driving record I see repeated offenses for driving while suspended when you did have actual notice of your suspensions. All the witnesses for the State were lying despite the fact you had an independent witness, Roger Herr, who supported the state's witnesses saying that he saw a man, you, dragging and pulling the victim against her will. You complained at first about a plea agreement you were not offered. However, as Mr. Corrigan has already explained you can't plead guilty when you aren't guilty, and you were saying you were not guilty. And I find that those aggravators outweigh any of the mitigators. You've had chances at probation in the past and that has not proved to be successful." Tr. at 171.

## A. Aggravating Circumstances

Cox challenges the trial court's reliance upon his criminal history, his pending Operating While Suspended charges, his character,[5] his poor work history, that he needed rehabilitative treatment in a penal

---

**5.** Cox asserts that this includes the trial court improperly considering his maintaining his innocence as an aggravator.

facility, and the filing of petitions to revoke his probation as aggravators.

### 1. Criminal History

 In addressing Cox's criminal history, the trial court noted that Cox had been convicted of Criminal Recklessness as a Class D felony because of his possession of a handgun. According to Indiana Code § 35–38–1–7.1(a)(3) (Burns Code Ed. Supp.2002), the trial court was required to consider Cox's prior criminal record. The trial court appropriately considered Cox's previous conviction for Criminal Recklessness, which Cox does not challenge. Instead, Cox only challenges that the court may have also considered that the Criminal Recklessness offense was committed in conjunction with possession of a handgun on school property. The fact remains that the guilty plea to the Criminal Recklessness charge was a proper aggravator.

Cox also asserts that the trial court improperly considered his juvenile adjudications but additionally notes that the trial court did not mention his juvenile adjudications in the sentencing statement. From a review of the sentencing statement, we find no indication that the trial court considered any indiscretions which may have been committed by Cox in his youth.[6] The trial court did not err in relying upon Cox's criminal history as an aggravator.

### 2. Pending Charges

 Cox also challenges the trial court's reliance upon the charges which were pending against him for Operating While Suspended. Cox is correct in stating that a trial court may not rely upon an arrest record as an aggravator under I.C.

§ 35–38–1–7.1(b)(2), the subpart of the statute mandating that a trial court consider a criminal record. See Tunstill v. State, 568 N.E.2d 539, 545 (Ind.1991); Allen v. State, 722 N.E.2d 1246, 1252 (Ind.Ct.App. 2000). However, a trial court may consider an arrest record as reflective of the defendant's character and as indicative of the risk that the defendant will commit other crimes in the future. Tunstill, 568 N.E.2d at 545; Allen, 722 N.E.2d at 1253. From a review of the transcript, it does not appear that the trial court considered Cox's prior arrests as part of his criminal record. The statement referring to the pending charges was made following the trial court's questioning of whether Cox had been in a mentoring program or received drug or alcohol counseling while he was on probation and a discussion of the probation violations. The statement was not made in the context of a discussion of Cox's criminal history or as an indicator of the amount of weight which was being applied to the criminal history. Rather, the statement appears to be indicative of Cox's character.[7]

### 3. Character

Cox also asserts that the trial court indicated that Cox's desire to maintain his innocence was an aggravating factor. Specifically, Cox states that the trial court's use of "not taking responsibility for actions" is another way of saying that Cox's assertion of innocence was an aggravator. Tr. at 171. The State argues that the trial court was not considering Cox's maintaining his innocence as an aggravator as the trial court never mentioned "maintaining

---

**6.** Although the Criminal Recklessness offense was committed when Cox was sixteen, he was waived to adult court and was convicted accordingly.

**7.** The statement, as it relates to Cox's character, will be discussed in depth in the next section which addresses many issues relating to what the trial court considered as Cox's character by his failure to take responsibility for his actions.

his innocence" at the sentencing hearing or in the written sentencing statement. Appellee's Brief at 11. While we agree that the trial court did not mention Cox's maintaining his innocence, we cannot agree with the State that the trial court did not consider it as an aggravator.

■■■■ A court may not enhance a sentence for a defendant consistently maintaining his innocence if the defendant does so in good faith. *Bluck v. State*, 716 N.E.2d 507, 512 (Ind.Ct.App.1999). However, a trial court may consider as an aggravator the defendant's lack of remorse. *Id.* at 513. A lack of remorse is displayed by a defendant when he displays disdain or recalcitrance, the equivalent of "I don't care." *Id.* This is distinguished from the right to maintain one's innocence, i.e., "I didn't do it." *Id.*

■■■ In stating that Cox had failed to accept responsibility for his actions, the court relied upon several statements by Cox. Some of these statements do raise concerns about Cox's effort to maintain his innocence, and do not appear to support the trial court's conclusion that he was unremorseful or failed to accept responsibility for his actions. For example, after Cox's conviction for Criminal Recklessness, he testified at the sentencing hearing that the gun which formed the basis for the charge did not belong to him and that he was a passenger in the vehicle in which the gun was found under the seat. The trial court relied upon this statement as showing that he failed to take responsibility for the action that led to his conviction. However, it appears that Cox was doing no more than maintaining that he was innocent of that charge and that, at the very least, the trial court should consider the

facts surrounding the conviction in assessing the weight to be given to it as an aggravator.[8] There is no indication that the statements discussing the conviction were made in disdain or recalcitrance.

The trial court also relied upon Cox's assertion that the State's witnesses were lying about the incident and that it did not occur as an indication of his failure to accept responsibility. Again, this appears to be no more than Cox asserting his innocence. Cox's defense to the State's charges was that he was in the club but that he did not see J.H., nor did he approach her. The trial court noted that an independent witness, the club owner, testified that he saw Cox dragging and pulling J.H. through the club. While the testimony of the State's witnesses was ultimately believed by the jury, and we have determined that the testimony was sufficient to support the conviction, Cox was doing no more than maintaining his innocence in spite of his conviction. We would expect no less from Cox, considering that he appealed the very issue of whether the evidence was sufficient to support his conviction. It appears that Cox's statement was made in good faith and there is no indication that it was made in disdain or recalcitrance. *See Hollen v. State*, 740 N.E.2d 149 (Ind.Ct.App.2000) (stating that even though there was testimony from a deputy police officer and his brother indicating defendant's guilt, which the jury ultimately believed, defendant's maintaining his innocence does not mean that his defense was asserted in bad faith, thereby subjecting the defendant to a more severe penalty because he maintained his innocence and lost), *opinion adopted by* 761 N.E.2d 398 (Ind.2002).

---

**8.** We note that the only facts available to the trial court and this court upon review regarding the Criminal Recklessness conviction consisted of Cox's brief statement at the hearing and the minimal information contained in the pre-sentence investigation report. We make no determination as to the actual facts leading to the arrest and conviction.

■ While we have determined these two grounds upon which the trial court relied in determining that Cox failed to take responsibility for his actions were improper, we also note that the trial court did not err in considering his charges for Operating While Suspended. Cox testified that the charges for Operating While Suspended arose out of his license being suspended for his failure to produce proof of insurance following an accident. He maintained that he had insurance the entire time but did not submit it in time to prevent his license from being suspended. From the transcript, it is clear that the trial court considered the testimony of Cox, but the trial court noted that Cox committed the repeated offenses even though he had notice that his license was suspended. The trial court did not err in relying upon Cox's actions in regard to the Operating While Suspended charges.

■ The trial court also relied upon Cox's earlier complaint that he was not offered a plea agreement. It appears that Cox had complained either to his counsel, or to the trial court off the record, about his counsel failing to inform him of an offer for a plea agreement. The only testimony or information in the record which we have been able to find addressing the issue was a brief statement made by Cox during his sentencing hearing and a paragraph in the pre-sentence investigation report in which Cox asked questions about a plea agreement.[9] At the sentencing hearing, his counsel asked him if he had some complaints about not being told about a plea agreement and whether he was making a claim of ineffective assistance of counsel.

Cox responded that he was not making a claim of ineffective assistance of counsel and that he and his counsel cleared up the issue of whether he thought his counsel failed to do something which he should have done.

While the entire history regarding Cox's complaint about a plea agreement does not appear to be before this court, we discern from the record that whatever disagreement Cox may have had with his counsel regarding it was brought to the court's attention and was resolved before the sentencing hearing. We fail to see how this dispute over a plea agreement, in light of the settlement of any disagreement between Cox and his counsel, indicates his failure to take responsibility for his actions. This is especially true in light of the trial court's failure to state the specific reason why the initial complaint about a plea agreement would be aggravating. Following a search of the record, we cannot say that the trial court's use of the initial complaint regarding the plea agreement was proper without some explanation from the trial court indicating how this factor was included in the evaluative process of assessing the aggravators and mitigators.

### 4. Work History

■ Cox also challenges that the trial court erred in considering his poor work history as an aggravating circumstance. Cox does not claim that it was improper for the court to consider his work history; rather, he claims that the factor should have been considered as a mitigator because it was indicative of his mental illness.[10] In light of the evidence presented

---

9. We note that appellant's appendix contains a plea agreement signed by Cox which was file stamped by the court clerk on April 30, 2001. That same day, an order was filed by the trial court which indicated that the plea was withdrawn by Cox and that no further plea agreement would be accepted.

10. Cox's claim regarding his mental illness will be addressed in more detail as we discuss mitigating circumstances.

which indicated that Cox had not been able to maintain gainful employment, we cannot say that separate and apart from a mental condition as an explanation for the poor work history, it was improper for the trial court to consider it.

### 5. Need for Rehabilitative Treatment in a Penal Facility

■ Finally, Cox alleges that the trial court found that he had not successfully completed probation and was in need of rehabilitative treatment in a penal facility as an aggravator. From reading the transcript of the sentencing hearing and a copy of the written sentencing order, we are unable to agree that the trial court considered, as an aggravator, that Cox needed rehabilitative treatment provided by a penal facility. At the sentencing hearing, the trial court did state that Cox had chances at probation in the past and that they had not proved successful. (TR 171) However, this statement was made after the trial court had discussed the various aggravators and mitigators and had informed Cox that the aggravators outweighed the mitigators. A review of the written sentencing order reveals that the trial court did not include any statement of Cox's failure to successfully complete probation or the need for rehabilitative treatment in a penal facility as an aggravator. The trial court to the contrary indicated that it did not consider it as an aggravator. Rather, the statement was most likely to caution Cox and to point out his failures upon his previous sentence to encourage him to stay out of trouble while he was serving this sentence. The trial court committed no error in this regard.

### 6. Probation Violations

The trial court also considered that Cox had two petitions to revoke his probation filed against him while serving probation for his conviction for Criminal Recklessness. Indiana Code § 35–38–1–7.1(b)(1) authorizes a trial court to consider that an individual has recently violated the conditions of probation as an aggravating circumstance. However, Cox asserts that its use as an aggravating circumstance under I.C. § 35–38–1–7.1 is improper because Ind.Code § 35–50–1–2(d) (Burns Code Ed. Supp.2002) mandates that if a further crime is committed before an individual is released from probation, the terms of imprisonment for the crimes shall be served consecutively. Cox asserts that "ordinarily a single aggravating circumstance should not be used to impose both an enhanced sentence and consecutive sentences." Appellant's Brief at 21 (citing *Smith v. State*, 655 N.E.2d 532, 542 (Ind. Ct.App.1995), *trans. denied*; *Staton v. State*, 640 N.E.2d 741 (Ind.Ct.App.1994), *trans. denied*).

We first note that it is not at all clear to this court that the trial court considered as an aggravating circumstance the fact that Cox was on probation when he committed the crimes for which the trial court was sentencing him. Rather, it appears that the trial court was considering prior violations committed by Cox while he was on probation for the Criminal Recklessness conviction. As stated above, I.C. § 35–38–1–7.1 clearly authorizes the trial court to consider past probation violations as an aggravator. The trial court did not err in relying upon his previous probation violations as an aggravating circumstance.

Addressing Cox's specific claim, it has been said by this court and our Supreme Court that the same factors which may be used to enhance a presumptive sentence may also be used to justify consecutive sentences. *See Walter v. State*, 727 N.E.2d 443, 448 (Ind.2000); *Allen v. State*, 722 N.E.2d 1246, 1253 (Ind.Ct.App.2000). It has also been repeatedly stated that a

single aggravating circumstance may be sufficient to support an enhanced sentence and to impose consecutive sentences. *Walter,* 727 N.E.2d at 448; *Thacker v. State,* 709 N.E.2d 3, 10 (Ind.1999); *Allen,* 722 N.E.2d at 1253; *Payne v. State,* 687 N.E.2d 252 (Ind.Ct.App.1997). As discussed by this court in *Payne,* in addressing the specific language from *Staton* upon which Cox relies, the use of a single aggravator to both enhance a sentence and to impose consecutive sentences is proper when the single aggravator is "particularly egregious." 687 N.E.2d at 255. There has been some disagreement between panels of this court about whether this "particularly egregious" qualification upon when a single aggravator may be used to both enhance a sentence and impose consecutive sentences is mandated by our Supreme Court. *See Allen,* 722 N.E.2d at 1253 n. 6; *Payne,* 687 N.E.2d at 255; *Staton,* 640 N.E.2d at 743.

In *Deane v. State,* 759 N.E.2d 201, 205 (Ind.2001), our Supreme Court addressed the question of whether there are any qualifications for when a single aggravator is sufficient to support an enhanced sentence. In answering that question, the Supreme Court stated:

> "We frequently say a single aggravating circumstance may be sufficient to support the imposition of an enhanced sentence. (citation omitted). This does not mean that any single aggravator will suffice in all situations. A non-violent misdemeanor ten years in the past, for example, would hardly warrant adding ten or twenty years to the standard sentence." *Id.* at 205.

This statement explicitly asserts that there must be some qualification upon the weight of a single aggravator when relying upon it to support an enhanced sentence upon review. At the very least, this statement also implies that it is necessary that there be some qualification upon the use of a single aggravator to both enhance a sentence and to impose consecutive sentences.

However, while we agree with Cox's proposition that there may be some cases in which the use of the single aggravator of a probation violation to both enhance a sentence and to impose consecutive sentences would be improper, we are not faced with such a situation here. As we have already held, the trial court relied upon valid aggravators other than, and including, the fact that Cox had committed probation violations in the past. And as stated before, it is not at all clear to this court that the trial court was considering the fact that Cox committed the criminal acts for which he was being sentenced while he was on probation.

### B. *Mitigating Circumstances*

▮▮▮▮▮ Cox also claims that the trial court failed to consider certain mitigators. Specifically, he asserts that the trial court should have considered that he had a history of mental illness, that he was likely to respond affirmatively to probation or short term imprisonment, and that his character indicated he was unlikely to commit another crime. The trial court is not required to find mitigating factors or to accept as mitigating the circumstances proffered by the defendant. *Powell v. State,* 751 N.E.2d 311, 317 (Ind.Ct.App.2001). " 'Only when the trial court fails to find a significant mitigator that is clearly supported by the record is there a reasonable belief that it was overlooked.' " *Id.* (quoting *Legue v. State,* 688 N.E.2d 408, 411 (Ind.1997)).

### 1. *Mental Illness*

▮▮▮▮ Regarding mitigating circumstances, we first address the trial court's failure to consider Cox's mental illness. At sentencing, Cox testified that he suffers from bi-polar disorder, explosive anger dis-

order, and severe depression. He also indicated that he needed constant supervision by a psychiatrist and that he has been taking medications since he was eleven years old.

The State did not address Cox's claim regarding his mental illness in its brief. Appellee's failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief. *Newman v. State*, 719 N.E.2d 832, 838 (Ind.Ct.App.1999), *trans. denied*. This failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required. *Id.* However, counsel for appellee remains responsible for controverting arguments raised by appellant. *Id.* For appellant to win reversal on the issue, he must establish only that the lower court committed prima facie error. *Id.* Prima facie means at first sight, on first appearance, or on the face of it. *Id.*

Trial courts should consider on the record what mitigating weight, if any, to accord the evidence of mental illness. *Powell*, 751 N.E.2d at 318. The trial court is not obligated to give the evidence the same weight the defendant does. *Id.* However, where documented, mental illness, especially if it has some connection to the crime involved, must be given some, and sometimes considerable, weight in mitigation. *Biehl v. State*, 738 N.E.2d 337 (Ind.Ct.App.2000), *trans. denied*. Here, Cox testified at his sentencing hearing that he suffered from a mental illness. The pre-sentence investigation report also contained references to Cox's mental health, including a copy of a psychiatric evaluation conducted at Wabash Valley Hospital approximately four months before the incident between Cox and J.H. occurred. In light of the evidence before the trial court, the failure of the trial court to consider Cox's mental illness was prima facie error.

### 2. Respond Affirmatively to Probation or Short Term Imprisonment

Cox asserts that the testimony presented at his sentencing hearing by his wife, his mother, and his spiritual advisor, indicating that Cox had made significant positive changes in his life and was enrolled in Indiana Business College, warranted the trial court's consideration that Cox would have responded affirmatively to probation or short term imprisonment. While Cox may have made and might continue to make positive improvements in his life, we cannot say that the record clearly indicates that this was a mitigating circumstance which the trial court overlooked. The record is replete with instances showing Cox's failure to successfully complete the probation which he was serving for his prior felony conviction. In light of the several recent violations of the conditions of his probation, the trial court did not err in determining that Cox's ability to respond affirmatively to probation or short term imprisonment was not a mitigating circumstance.

### 3. Cox's Character

Cox also asserts that his character and attitude indicate that he is unlikely to commit another crime. Once again, we cannot agree with Cox that the record clearly indicates that this is a significant mitigator which the trial court should have considered. In fact, the trial court did consider Cox's character and attitude in discussing the pending charges against Cox and his failure to take responsibility for his actions regarding his probation violations. The trial court did not err in failing to find Cox's character as a mitigating circumstance.

### C. Weight of the Aggravators and Mitigators

While it is true that there are several aggravators which would support

the enhanced sentence that Cox has received, we are not confidant that the trial court would balance the aggravating and mitigating circumstances in the same way as before in light of this decision. The trial court's consideration of Cox's failure to take responsibility for his actions seems to have carried great weight in the determination of the proper sentence as there were several grounds upon which the trial court relied to find it an aggravator. We also know that the trial court must give some mitigating weight to Cox's mental illness if it impacted his criminal acts. As it appears that we cannot fully assess these criteria from just a review of the written record of this case, and we cannot say with confidence that the trial court would weigh the aggravators and mitigators in the same manner as was previously done, we remand to the trial court for a new sentencing hearing. *See Hatchett v. State*, 740 N.E.2d 920, 929 (Ind.Ct.App.2000), *trans. denied.*

We affirm Cox's conviction as the evidence provided through the victim's and witnesses' testimony was sufficient to support the jury's determination of Cox's guilt beyond a reasonable doubt. However, because we have determined that certain aggravators were improperly considered, and because an important arguable mitigator was not, we remand with instructions to conduct a new sentencing hearing.[11]

We affirm in part and remand for a new sentencing hearing.[12]

BAILEY and MATHIAS, JJ., concur.

*ORDER*

This Court having heretofore handed down its opinion in this appeal on October 28, 2002, marked Memorandum Decision, Not for Publication;

Comes now the Appellant, by counsel, and files herein Motion to Publish Memorandum Decision, alleging therein that said decision clarifies the holding of the Supreme Court of Indiana in the case *Deane v. State*, 759 N.E.2d 201 (Ind. 2001) which established that there must be some qualification upon the weight if a single aggravating factor used to support an enhanced sentence upon review and upon the use of a single aggravating factor to both enhance a sentence and to impose consecutive sentences.

The Court having examined said Motion, having reviewed its opinion in this case, and being duly advised, now finds that said Motion to Publish should be granted and this Court's opinion heretofore handed down in this cause as a Memorandum Decision should now be ordered published.

IT IS THEREFORE ORDERED as follows:

1. The Appellant's Motion to Publish Memorandum Decision is granted and this Court's opinion heretofore handed down in this cause on October 28, 2002, marked Memorandum Decision, Not for Publication is now ordered published.

---

11. Cox also asserted upon review that the sentence he received was manifestly unreasonable. Because we have remanded this cause for a new sentencing hearing, we do not address the reasonableness of the sentence imposed.

12. We note that the abstract of judgment indicates that as to Counts II and III, Bradly was convicted of Battery, a Class B felony, and Invasion of Privacy, a Class B felony, when in fact, Bradly was convicted of both as Class B misdemeanors. The trial court is instructed to correct the clerical error in the abstract of judgment to reflect that Bradly was convicted on Counts II and III as Class B misdemeanors.