Jeffrey Jamaal GOODSON,
Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 18A02–0005–CR–339.

Court of Appeals of Indiana.

May 30, 2001.

Kelly N. Bryan, Bryan and Bryan, Muncie, IN, Attorney for Appellant.

Karen Freeman–Wilson, Attorney General of Indiana, James B. Martin, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

SULLIVAN, Judge.

Appellant, Jeffrey Jamaal Goodson, appeals from the judgment upon a jury's verdict finding him guilty of two counts of

Dealing in Cocaine [1] as a Class A felony. Goodson presents three issues for our consideration, which we restate as:

(1) whether the trial court erred by allowing certain witnesses to identify Goodson from videotapes and photographs;

(2) whether the trial court erroneously allowed hearsay evidence; and

(3) whether the evidence was sufficient to support Goodson's conviction upon Count I.

We affirm.

The record reveals that on June 21, 1999, the Muncie/Delaware County Drug Task Force (DTF) sent a confidential informant to purchase cocaine near Munsyana Homes Family Housing Complex, a federally subsidized family housing complex in Muncie, Indiana. The DTF provided the confidential informant with a car which was fitted with audio and video equipment which recorded to a videotape located in the trunk of the car. The video camera focused on the passenger side of the vehicle. DTF Officer Allen Williams instructed the confidential informant to drive the car to Munsyana Homes and attempt to purchase cocaine. Officer Williams followed the confidential informant at a distance in an unmarked car. Because Officer Williams observed the drug transaction from a distance, he was unable to recognize the individual who approached the passenger side of the car and sold cocaine to the confidential informant. However, the videotape captured the cocaine sale, and Officer Williams was able to identify the person on the tape as Goodson.

A similar chain of events occurred on June 24, 1999. DTF Officer Brent Brown provided the same confidential informant with the same car used on June 21, 1999. Officer Brown followed the confidential in-

formant to Munsyana Homes, where Goodson entered the vehicle and sold cocaine to the confidential informant. Goodson was later arrested and charged with two counts of Dealing in Cocaine.

At trial, the State offered into evidence the videotapes which had recorded the cocaine sales on June 21 and 24. Goodson made no objection to those portions of the videotapes depicting the actual drug transactions. However, he did object to other portions of the videotapes as hearsay. Specifically, Goodson objected to the statements made by the police at the beginning and end of each tape and various comments made by the confidential informant. The court overruled Goodson's objections. The trial court, over Goodson's objections, also allowed Officer Brown and Officer Scott O'Dell to identify Goodson from the videotapes and still photographs taken from the videotapes. The jury found Goodson guilty on both counts.

I

*Identification Testimony*

Goodson claims that the trial court erred when it allowed Officers Brown and O'Dell to identify him as the man depicted in the videotapes and still photographs. The admissibility of evidence is within the sound discretion of the trial court, and we will not disturb the trial court's decision absent a showing that it abused that discretion. *Johnson v. State,* 710 N.E.2d 925, 927 (Ind.Ct.App.1999). Under a "silent witness" theory, videotapes and photographic evidence may be admitted as substantive evidence, rather than merely as demonstrative evidence. *Shepherd v. State,* 690 N.E.2d 318, 323 (Ind.Ct.App.1997), *trans. denied; Bergner*

1. Ind.Code § 35–48–4–1 (Burns Code Ed. Repl.1998).

*v. State*, 397 N.E.2d 1012, 1015 (Ind.Ct. App.1979), *trans. denied.*

Goodson cites *Groves v. State*, 456 N.E.2d 720, 722 (Ind.1983) in support of his contention that the trial court invaded the province of the jury when it allowed Brown and O'Dell to identify him from the videotapes and photographs. In *Groves*, a police officer testified that he believed that the person depicted in a photograph was the defendant. While noting that this testimony would lay the foundation for the admission of the photograph as demonstrative evidence, our Supreme Court held that such failed to lay a sufficient evidentiary foundation for the admission of the photograph as a silent witness. *Id.* at 722–23. The *Groves* court also noted that "because '[the photograph] speaks for itself,' a witness' opinion as to what it is saying ... invades the province of the jury." *Id.* at 723.

More recently, however, this court has held that the lay opinion of a police officer familiar with the defendant was admissible under Indiana Evidence Rule 701 [2] as being helpful to the jury in reaching a decision about the identification of the person depicted in a videotape admitted as a silent witness. *See Gibson v. State*, 709 N.E.2d 11, 15 (Ind.Ct.App.1999) (citing *United States v. Stormer*, 938 F.2d 759, 762 (7th Cir.1991)), *trans. denied.* At first blush, the holding in *Gibson* seems inconsistent with the above-quoted portion of *Groves*. However, *Groves* was decided before the adoption of Evidence Rule 701, upon which *Gibson* relied. Furthermore, the holding of *Groves* was that the State had failed to

lay a sufficient evidentiary foundation for the photograph. 456 N.E.2d at 723. We also note that our Supreme Court had an opportunity to accept transfer in *Gibson* in order to reaffirm *Groves*, but declined to do so.[3] Goodson invites us to ignore *Gibson* in favor of the dictum contained in *Groves*. We decline to do so.

Here, Officers Brown and O'Dell testified that they had known Goodson for the past two or three years, and their lay opinion that the person shown in the videotape and photographs was Goodson was helpful to the jury in determining the identity of the person depicted therein. Therefore, the trial court did not abuse its discretion by allowing these witnesses to testify that they recognized Goodson in the videotape and photographs.

## II

### *Hearsay*

■ Goodson next claims that the trial court erroneously admitted certain portions of the videotapes. Both videotapes contained an introductory statement from a police officer known as a "header," wherein a police officer described DTF procedures and the objective to purchase cocaine near Munsyana Homes. Also on both videotapes, the confidential informant described the route he was taking as he drove. Then, after the cocaine was bought, the confidential informant described the seller's appearance. At the end of both tapes was a "debriefing," wherein a police officer explained what had

---

2. "If the witness is not testifying as an expert, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of the witness's testimony or the determination of a fact in issue." Ind.Evidence Rule 701.

3. We further note that the precedential value of the *Groves* decision was called into question in *Stark v. State*, 489 N.E.2d 43 (Ind. 1986), wherein the majority ignored the *Groves* foundational requirements for the admission of silent witness evidence. *See id.* at 48 (Shepard, J., concurring in result).

happened and what procedures the police would follow next.

Goodson claims that the trial court erred in admitting these portions of the videotapes because they contained impermissible hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Ind.Evidence Rule 801(c). Hearsay is inadmissible unless it falls within one of the exceptions to the rule against hearsay. Ind.Evidence Rule 802.

■ The State contends that the statements made by the confidential informant and police on the videotape were not hearsay because they were not offered to prove the truth of the matter asserted. Instead, the State argues that the statements were offered to "show the investigative steps that a police officer took." Appellee's Brief at 6. An out-of-court statement introduced to explain why a particular course of action was taken during a criminal investigation is not hearsay because it is not offered to prove the truth of the matter asserted. *Patton v. State,* 725 N.E.2d 462, 464 (Ind.Ct.App.2000). Even so, we require a reasonable level of assurance that such testimony was neither offered by the proponent nor received by the trier of fact as evidence of the truth of the third party's statement. *Owens v. State,* 659 N.E.2d 466, 476 (Ind.1995). "[T]hat assurance may arise from an immediate limiting instruction or from the sketchiness of the testimony itself." Robert Lowell Miller, Jr., 13 INDIANA PRACTICE § 801.303 at 502 (2d ed. 1995) (footnotes omitted).

■ The header and debriefing on the tape from June 21, 1999, were made by Officer Williams, whose testimony during trial contained substantially the same information. Likewise, Officer Brown's trial testimony was substantially the same as his statements in the header and debriefing on the tape from June 24, 1999. Thus, even were we to assume that these statements were hearsay, we would not reverse Goodson's convictions, as the taped statements were cumulative of the testimony given by Officers Williams and Brown at trial. Any error in the admission of evidence is harmless when cumulative of properly admitted evidence. *Fuller v. State,* 674 N.E.2d 576, 578 (Ind.Ct.App. 1996).

■ In a related argument, Goodson claims he was denied his right of confrontation when the trial court admitted the videotaped statements of the confidential informant, who did not testify at trial. On both tapes, the confidential informant detailed the route he drove to Munsyana Homes. Goodson claims that these statements prejudiced him because they were evidence that the cocaine sales took place within 1,000 feet of Munsyana Homes—an element of the charges against him.

These statements have little or no bearing on why a particular course of action was taken by the police during their investigation. Nor was the jury admonished to consider these statements in a limited fashion. There is no reasonable assurance that the jury did not receive such information as proof of what was being said—that the confidential informant was indeed driving to Munsyana Homes. Thus, these out-of-court statements were hearsay. Furthermore, these statements do not fit an exception to the prohibition against hearsay.

■ Nevertheless, any error in the admission of hearsay is to be considered harmless if its probable impact upon the jury, in light of all of the evidence in the case, is sufficiently minor as not to affect the substantial rights of the parties. Ind.Trial Rule 61; *Smith v. State,* 718

N.E.2d 794, 805 (Ind.Ct.App.1999), *trans. denied.* To determine whether the admission of this evidence affected Goodson's substantial rights, we assess its probable impact upon the jury. *Id.*

In the present case, Officer Brown testified at trial that on June 24, 1999, he followed the confidential informant and observed an individual, later identified as Goodson, approach the car. When asked where this took place, Brown testified, "Somewhere in the 800 block of South Monroe between First and Second Street." Record at 167. Jerome Williams, chairman of the Muncie Housing Authority Board, testified that the 800 block of South Monroe was within Munsyana Homes.

Officer Williams testified that on June 21, 1999, he told the informant that "we would be going on the East side of Madison Street in the Munsyana Homes, on Monroe Street, an area of First and Second Street, in that area we were going to purchase some drugs from people in that area." Record at 128. Williams also testified that, "we would follow the informant to the area and back to the meeting location." Record at 130. Williams further testified that he was approximately one to one and one-half blocks away from the informant when the informant stopped the car and was approached by Goodson.

Goodson claims that Officer Williams's testimony shows only that the police *planned* for the confidential informant to go to Munsyana Homes, not that he actually went there. However, there was no evidence indicating otherwise, and the jury could reasonably infer from this testimony that the confidential informant bought cocaine from Goodson at Munsyana Homes as instructed by the police. In fact, given this testimony, no reasonable juror could have concluded otherwise. Because there was substantial independent evidence that both cocaine sales occurred within 1000

feet of Munsyana Homes, the trial court's error in admitting the confidential informant's hearsay statements was harmless. *See Newman v. State,* 719 N.E.2d 832, 837 (Ind.Ct.App.1999), *trans. denied.*

Goodson also claims that portions of the tapes, wherein the confidential informant described the appearance of the person who sold him the cocaine, were impermissible hearsay. Again, even if we were to assume that these descriptions were hearsay, their admission into evidence was harmless.

The State presented the videotapes of the cocaine purchases on June 21 and June 24, 1999, and still photographs of Goodson taken from the tapes. Officers Williams, Brown, and O'Dell all identified Goodson as the man depicted in the videotapes and photographs. We therefore conclude that the impact of the confidential informant's statements was insignificant in light of the substantial independent evidence that Goodson was the individual who sold cocaine to the confidential informant.

## III

### *Sufficiency of the Evidence*

Goodson claims that the evidence was insufficient to support his conviction upon Count I of the information. Our standard of review upon claims of insufficient evidence is well settled. We neither reweigh the evidence nor judge witness credibility, and we consider only the evidence and reasonable inferences supporting the verdict. *VanMatre v. State,* 714 N.E.2d 655, 657–58 (Ind.Ct.App. 1999). A conviction will be affirmed if there is substantial evidence of probative value from which a reasonable trier of fact could have concluded that the defendant was guilty beyond a reasonable doubt of the crime charged. *Id.* at 658.

In the present case, Count I alleged that on June 21, 1999, Goodson "did knowingly deliver Cocaine within one thousand (1000) feet of a family housing complex, to wit: Munsyana Homes Family Housing Complex." Record at 9. Goodson does not deny that Munsyana Homes is a family housing complex, as required to enhance Dealing in Cocaine to a Class A felony. See I.C. § 35-48-4-1(b)(3)(B)(iii). Instead, Goodson claims that the State did not prove that the cocaine delivery on June 21, 1999, took place within 1000 feet of Munsyana Homes. Goodson claims that the State proved merely that the police planned to purchase cocaine at Munsyana Homes, not that they actually did so. Admittedly, the evidence with regard to the location of the June 21 purchase was not as direct as the evidence with regard to the location of the June 24 purchase. However, as discussed above, the jury could reasonably infer from Officer Williams's testimony that the confidential informant drove to Munsyana Homes as instructed by the police and there purchased cocaine from Goodson.

### Conclusion

In conclusion, the trial court did not err by allowing witnesses to identify Goodson from the videotapes and photographs. Although some of the out-of-court statements on the videotapes may have been hearsay, their admission was harmless. Finally, the evidence was sufficient to support the convictions.

The judgment of the trial court is affirmed.

SHARPNACK, C.J., and MATHIAS, J., concur.